# WILLIAM H. DIXON

*v.*

# JOSEPHINE T. DIXON.

[Decided April 27th, 1907.]

1. Where a decree awarded the custody of certain children to their mother, but authorized the father to visit them at specified intervals, a letter written to the father by the mother's father that the mother had moved from New York to Portland, in the absence of any showing that the mother had authorized such statement, was insufficient to show that the mother had changed her permanent residence from New Jersey to Maine.

2. Where, in a proceeding to determine the custody of certain children, the mother answered, claiming the custody of the children, and the court awarded the same to her, with the provision that the father should be permitted to visit them, and it was established in that proceeding that the mother and the children were residents of New Jersey, the court, having acquired jurisdiction in the first instance, was entitled to modify the previous decree, notwithstanding the removal of the mother and children to another state.

3. A petition for the custody of children, as between parents living separately, authorized by *P. L. p. 263 § 8*, in which a writ of *habeas*

*corpus* may issue, as provided by section 12, is not a common-law *habeas corpus* proceeding, such writ being merely ancillary for the purpose of enabling the court to obtain jurisdiction of the children.

4. Where parents are living separately, the court may order their children kept within the state, or, if absent, brought within it.

5. Where the custody of children was awarded to the mother, who was living separate from the father, a modification of such order would not be made merely because the mother had taken the children to Maine, in the absence of proof that she intended to keep them there permanently, and to prevent the father from visiting the children as provided by the decree.

On petition for modification of order relating to custody of children.

*Mr. Richard V. Lindabury,* for the petitioner.

*Mr. Gilbert Collins,* for the defendant.

STEVENS, V. C.

On June 1st, 1905, William H. Dixon, the petitioner, filed his petition in this court, alleging that he and the defendant were married on January 30th, 1901, in the city of New York, and that they lived together in that city until May 3d, 1904, when his wife left him and went to live at her father's residence there; that they have two children, viz., William R., born March 19th, 1902, and Barbara W., born April 30th, 1903; that on June 8th, 1904, the defendant took the children to Madison, in this state, to live with her in a house provided by her father, at which place she had resided ever since. The petition alleged the father's willingness to provide for the children, and stated that he had difficulty in obtaining access to them. The prayer was for a writ of *habeas corpus,* to the end that an order might be made awarding their custody to the petitioner for the whole or a portion of the time, or for such other order with respect to their care and custody as should be just.

The defendant answered, denying that her father was a resident of New York, and averring that he had for several years been a citizen of New Jersey, with a home at Madison, where he resided during the greater portion of each year. She denied that

she and petitioner had lived in the city of New York up to May 3d, 1904, and averred that they had lived together in Madison during the summer of 1901, and that in May, 1903, petitioner having gone away for his health, she and her children had gone to her father's house in that town, and that in September, 1903, she and the petitioner, together with her children, after remaining a few days at her father's house in Madison, had taken possession of a neighboring house there, where they had continued to reside during the winter, and that she and her children had continued to live there ever since, except for a short interval.

It will thus be seen that at the commencement of the proceeding, and for two years prior thereto, the defendant and her children had been residents of New Jersey.

To the answer petitioner filed a replication, and the case was heard on the merits. The court decreed as follows:

"It is, on this 3d day of August, 1905, on motion of Collins & Corbin, solicitors of defendant, ordered that the prayer of the petitioner to have the custody of the children in the writ named, to wit, William H. Dixon, Jr., and Barbara Dixon, be denied, with costs.

"And it is further ordered that the petitioner shall be permitted to visit said children once in each week while living in Morristown, at such convenient time and place as the parties may agree, and that when the said children are living in New York they shall be taken, at least once in each week, for a reasonable time, at such convenient hour during the day as the petitioner may desire, to the house of the parents of the petitioner.

"Either party may apply to this court for further direction as there may be occasion."

The petitioner appealed from this decree, and on December 3d, 1906, it was affirmed by the court of errors and appeals.

Its correctness and propriety in all its parts is therefore beyond controversy.

On February 13th, 1907, William H. Dixon filed a supplemental petition stating most of the foregoing facts, and alleging that he had been permitted to have access to his children pursuant to the terms of the order up to Saturday, January 26th, 1907, but that on the 8th day of February, 1907, he was notified by her father that defendant had "moved" from Madison to Portland, and, on February 11th, that his wife and children

were at the Lafayette Hotel in that city.  The first letter stated
that it would be convenient (to Mrs. Dixon) that Mr. Dixon
should see the children there, by appointment, as usual.  The
petitioner states that he is engaged in business in the city of
New York, and that all his time is occupied therein except Sat-
urday afternoons, and that it would be quite impossible for him
to make weekly or even frequent visits to Portland.

The prayer is that if Mrs. Dixon is desirous of living in Port-
land she should not be permitted to keep the children there, and
that she should be directed to return them either to the city of
New York or to the State of New Jersey, with an alternative
prayer that the custody of the children should be awarded to
him.

An order to show cause why the prayer of the petitioner should
not be granted was made upon the filing of the petition.  It,
with a copy thereof, was personally served upon the defendant
in Portland.  She appeared by counsel on the return day and
opposed the making of any further order, but did not file an
answer or make any statement with reference to her future
plans.  She insisted by counsel, in addition, that the court was
without jurisdiction to make any further order in the premises
inasmuch as it appeared that none of the parties were at present
within the jurisdiction of the court.

There is no proof on the part of Mrs. Dixon that she is not a
resident of New Jersey.  Mr. Dixon's allegation in that regard
is, not that his wife had ceased to be a resident, but that he has
been informed by a letter, written by defendant's father in New
York, that his daughter had "moved" from New York to Port-
land.  It does not appear that Mr. Williams was authorized by
his daughter to bind her to this statement.  The word "moved"
is somewhat indefinite.  It may or may not, according to circum-
stance, warrant the inference of a permanent change of residence
on her part.  But if it be assumed that she has changed her
residence, I am still of the opinion that the court has jurisdiction
to modify its previous order.  The wife's answer in the original
proceeding demonstrates that she and her children were then
residents of New Jersey.  The proceeding was not a pure com-

mon-law *habeas corpus* proceeding—a proceeding which either terminated or continued the restraint and so ended—but a proceeding "before the chancellor under his general power to superintend the affairs of infants and to provide who shall permanently have the custody of them during minority." *Rossell* v. *Rossell,* 64 *N. J. Eq.* (*19 Dick.*) *22; State* (*Baird*) v. *Baird, 19 N. J. Eq.* (*4 C. E. Gr.*) *481; Buckley* v. *Perrine, 54 N. J. Eq.* (*9 Dick.*) *285; S. C., 55 N. J. Eq.* (*10 Dick.*) *515.*

The proceeding by petition in a case where the parents are living separately is expressly authorized by section 8 of the act of 1902 respecting minors. *P. L. 1902 p. 263.* The petition in this case is entitled in the court of chancery and it prayed the appropriate process of *habeas corpus* in order to bring the infants before the court. This writ might have issued in such a proceeding prior to the act of 1902 (*State, Baird, pros.,* v. *Baird, 19 N. J. Eq.* (*4 C. E. Gr.*) *481, 487*), but it is expressly authorized by section 12. It is also provided in express terms by section 10 that the court may make the necessary orders from time to time in relation to the custody or possession.

The situation then is this : A proceeding was instituted whose scope was the permanent custody of two minor children, and it was so instituted under the general jurisdiction of the court of chancery as declared and regulated by express statute. Under such a proceeding any order made was, in the nature of things, temporary and open to such modification as the situation itself might from time to time call for. The order itself expressly provided that "either party may apply to this court for further direction as there may be occasion."

Under the circumstances it would seem to be clear that the court, having at the beginning acquired complete jurisdiction over the defendant and her children, may continue to exercise that jurisdiction as occasion may require. In *Laing* v. *Rigney, 160 U. S. 531,* a wife, resident in New Jersey, filed a bill for divorce against her husband, resident in New York. The defendant appeared and answered. Then the wife filed a supplemental bill charging other acts of adultery subsequent to the filing of the original bill. A copy of this supplemental bill was,

pursuant to order, served *out* of the jurisdiction. To this defendant did not appear, and a decree was made *ex parte* finding him guilty of the adultery charged "in the said bill and supplemental bill," and awarding alimony. On the decree, so far as it awarded alimony, the complainant instituted a suit in New York, and thereupon defendant's counsel applied to this court to have the decree amended so as to make it read that the defendant had been guilty of adultery only as charged in the supplemental bill. The decree was amended accordingly, and then the defence set up to the suit in New York was that inasmuch as defendant had not been served with a subpœna to answer the supplemental bill, and the defendant had not appeared thereto, and service of the supplemental bill in New York was irregular and invalid, the court was without jurisdiction to make the money decree. It was held, however, that this decree was, under the federal constitution, entitled to full faith and credit in the courts of the State of New York, and could not be there impeached. This case goes further than I am required to go in the case at bar. In a certain sense a supplemental bill, alleging a fresh cause of action, arising after the commencement of the suit, is a new proceeding not within the scope or contemplation of the original bill, but yet such a bill was regarded by the supreme court as a continuation only of the original proceeding, and on this theory it was held that jurisdiction, having once attached, continued to the end. *Lynde* v. *Lynde, 181 U. S. 183,* is in the same direction. The case in hand differs from the case of *Laing* v. *Rigney* in the important circumstance that from the very outset the proceeding was designed to regulate the custody and possession of the children by a succession of orders made from time to time as the then situation might require. The mere fact, therefore, that Mrs. Dixon may be out of the jurisdiction *now* cannot prevent the court from making such an order as the present situation may appear to warrant. It is not to be presumed that she will disobey.

As to the children, it has been repeatedly held that, if necessary, the court may order them to be kept within the state. *In re Agar-Ellis, 24 Ch. Div. 317, 333; Miner* v. *Miner, 11 Ill.*

43; Campbell v. Campbell, 37 Wis. 206, 221; Ryce v. Ryce, 52 Ind. 64. Or, if absent, brought within it. Campbell v. Mackay, 2 Myl. & C. 26; Reg. v. Barnardo, 23 Q. B. Div. 305; 24 Q. B. Div. 296; Gordon v. Gordon, Pro. Div. 141 (1903); In re Jackson, 15 Mich. 417, 420; People, ex rel. Billotti, v. New York Asylum, 57 App. Div. 383; People, ex rel. Dunlap, v. N. Y. I. Society, 58 App. Div. 133.

Whether the order already made, or any subsequent order, is of such a nature as to entitle it in other states to full faith and credit under the federal constitution is a question suggested by the argument, but not before me for decision.

The case was fully heard upon the merits in July, 1905. The children were then two and three years old. They were remitted to their mother because she was thought to be the proper person to care for them at their tender age. Nothing is alleged in the petition going to show that she has become an improper person to have charge of them, or that she should be deprived of their custody now. The order directed, however, that the petitioner should be permitted to visit them once a week, and of this permission he has regularly availed himself. It does not appear that it would be for the welfare of the children that he should not continue to see and interest himself in them. The strong presumption is that he should. I think the mother ought not to deprive the father of the opportunity of seeing them at short intervals, as she would do if she could keep them permanently in Maine. There is as yet little or no proof that she intends to do so, and I doubt whether I ought to make any new order till such proof be forthcoming. I will hear counsel on the question of whether a reference should not be ordered to ascertain the fact.