## Hamilton v. Hamilton

*Stuckert & Yates*, for plaintiff.

*Cadwallader, Darlington & Clarke*, for defendants.

FULLAM, J., November 6, 1961.—Plaintiff is the former wife of defendant. By a decree of the Superior Court of New Jersey, Chancery Division, duly entered nisi on November 16, 1950, and made absolute February 17, 1951, the parties were divorced. The decree included an order requiring present defendant to pay plaintiff $50 per month for the support of a minor child.

The former wife, now a resident of California, has brought this assumpsit action against defendant, now a resident of this county, claiming the sum of $6,100, alleged to be the arrearages under the New Jersey court order. The complaint sets forth that defendant never made any payments pursuant to the decree.

Defendant has filed preliminary objections to the complaint, entitled "Petition Raising a Question of Jurisdiction," asserting that this court lacks jurisdiction over the subject matter of the action, since the New Jersey decree is not a final judgment and is not entitled to full faith and credit.

The determinative question in this case is whether the New Jersey decree in its present form is entitled to full faith and credit in the courts of Pennsylvania, under article IV, sec. 1, of the Constitution of the United States.

The Restatement of Conflict of Laws provides, in §464, Enforcement of Foreign Decree for Alimony:

"A valid judgment for alimony granted in one state can be enforced in another state to the extent of the amount already due and unpaid on the decree, and not subject to reduction."

And in §435, Non-Final Judgment:

"A valid foreign judgment for the payment of money which by the law of the state in which it was rendered is not a final judicial determination of the right to payment will not be enforced."

The applicable principles have been laid down by the Supreme Court of the United States in the leading case of Sistare v. Sistare, 218 U. S. 1, at pages 16-17, 30 S. Ct. 682, 54 L. Ed. 905 (1909) :

". . . where a decree is rendered for alimony and is made payable in future instalments the right to such instalments becomes absolute and vested upon becoming due, and is therefore protected by the full faith and credit clause, provided no modification of the decree has been made prior to the maturity of the instalments, . . . this general rule, however, does not obtain where by the law of the state in which a judgment for future alimony is rendered the right to demand and receive such future alimony is discretionary with the court which rendered the decree, to such an extent that no absolute or vested right attaches to receive the instalments ordered by the decree to be paid, even although no application to annul or modify the decree in respect to alimony had been made prior to the instalments becoming due."

See also Barber v. Barber, 21 Howard 582, 16 L. Ed. 226, and Lynde v. Lynde, 181 U. S. 183, 21 S. Ct. 555, 45 L. Ed. 810; Commonwealth ex rel. Bucciarelli v. Bucciarelli, 162 Pa. Superior Ct. 582.

It is, therefore, necessary for us to ascertain what the law of New Jersey is, on the question of the finality accorded to the alimony and support features of

divorce decrees in that State. On this question, plaintiff places chief reliance upon certain dicta in the Sistare case, to the effect that State alimony statutes are presumed to create vested rights in accrued installments unless the statute itself expressly provides otherwise, and upon the decision of the Advisory Master in Chancery in the case of Hatch v. Hatch, 15 N. J. Misc. 461, 192 Atl. 241 (1937).

In the Sistare case, the United States Supreme Court, applying New York law as it then existed, held that the courts of New York did not have the power to modify alimony decrees retroactively, and that therefore, such decrees were entitled to full faith and credit as to past due installments. Contrary to plaintiff's contention, the Sistare decision clearly did not establish or purport to establish any overriding principle of Federal law to the effect that unless the State statute clearly and explicitly gave the State courts power to modify retroactively, such power did not exist. That was the holding in the case, but it was based entirely upon a review of applicable New York statutes and New York decisions to that effect. And, in any event, the New York statute applicable in 1899, when the litigation arose, severely restricted the power of the court to make any change in such a decree, by providing that even as to future installments, special leave of court had to be obtained, upon cause shown, before either party could even apply to the court for a change in the decree. [While not relevant in the present case, it should perhaps be noted that New York courts now do have the power to modify retroactively, and their decrees are not entitled to full faith and credit until a judgment fixing the amount of the arrearages has been obtained, after due notice. Section 1171-*b* of the New York Civil Practice Act, as amended in 1940 and 1948; Lea v. Lea, 18 N. J. 1, 112 A. 2d 540 (1955); Tellian v. Healy, 60

N. J. Super. 539, 159 A. 2d 777 (1960). This change has been recognized by the Supreme Court. Griffin v. Griffin, 327 U. S. 220, 66 S. Ct. 556, 90 L. Ed. 635 (1945)].

Article IV, sec. 1, of the Constitution of the United States, the "full faith and credit" clause, does not require that the judgments of a sister State be given any greater effect than they would receive in the State where they were rendered. The question of whether the New Jersey statute here involved does or does not empower the New Jersey courts to modify their alimony decrees retroactively, is for the courts of New Jersey to determine and for present purposes we are bound by such determination.

The case chiefly relied upon by plaintiff, Hatch v. Hatch, 15 N. J. Misc. 461, 192 Atl. 241 (1937), does hold that New Jersey courts have no power to modify support or alimony decrees retroactively, and that such decrees create vested interests in accumulated arrearages, and are thus entitled to full faith and credit in accordance with the Sistare opinion. Two other lower court cases decided the same year reach the same result, citing the Hatch case: Stewart v. White, 192 Atl. 839 (Sup. N. J., 1937), and Poeter v. Poeter, 194 Atl. 792 (Ch. N. J., 1937). There is room for doubt as to whether these decisions accurately represented the law of New Jersey in 1937, as none of the three has ever been cited or followed on this question by any appellate decision in that State. Be that as it may, it now appears to be entirely settled in New Jersey that alimony and support orders embodied in divorce decrees are not final, that they may be modified or vacated retroactively and that they do not have the attributes of a final judgment at law.

This view was expressed in a well-reasoned opinion in the case of Duffy v. Duffy, 19 N. J. Misc. 332, 19 A.

2d 236 (1941), where the court stated, at pages 336-37:

"In this State executions to collect arrears of alimony or maintenance issue out of Chancery only upon the special order of the Chancellor. R. S. 2:29-58, N. J. S. A. 2:29-58, provides that an abstract of a Chancery decree may become a lien on lands if filed and recorded in the Supreme Court, but it has been held that a decree for alimony payable in future instalments is not such a money decree as will provide the basis of the lien. An order fixing the arrearages must be secured, and an abstract of such order filed and recorded. *Rooney v. Rooney,* 102 N. J. L. 551; 133 Atl. Rep. 752. Executions at law to collect alimony arrearages have never otherwise been permitted in New Jersey. In this respect our practice is essentially at variance with that in New York in the important respect pointed out by Chief Justice White in the *Sistare* case:"

And again, at page 340:

". . . That the court may infer from the circumstances surrounding a given case that the parties have made some arrangement between themselves with respect to support, or that complainant has acquiesced in defendant's default or has waived her strict rights under an alimony or maintenance decree, where she has failed for a long period of time to resort to the court, has long been settled law. The ecclesiastical courts would not ordinarily enforce arrearages of alimony beyond one year, a rule which has met with approval in our own decisions [citing numerous cases]."

Plaintiff attempts to distinguish the Duffy case on the basis that the support decree in that case had contained a reservation permitting amendment of the decree. However, the actual reservation in the decree goes no further than the applicable statute itself. The

decree provided "that either party be at liberty to apply, upon a future change of circumstances of the parties, for a variance or modification of this decree, touching said alimony maintenance and custody, as shall be equitable and just." The New Jersey statute in question, pursuant to which the decree in the present case was entered, provides: "Orders so made may be revised and altered by the court from time to time as circumstances may require": N.J.S.A., 2A.: 34-23.

In Madden v. Madden, 136 N. J. Eq. 132, 40 A. 2d 611, the Court of Errors and Appeals of New Jersey affirmed the decision of the lower court, to the same effect as the Duffy case. The opinion in the Madden case contains this statement:

". . . arrearages of alimony do not become vested in the former wife or take on the attributes of a judgment for the payment of a fixed sum until this court so orders."

In Federbush v. Federbush, 5 N. J. Super. 107, 68 A. 2d 473, 474 (1949), the Appellate Division of the Superior Court makes the following statement:

"It is not disputed that *Duffy v. Duffy*, 19 N. J. Misc. 332, 19 A. 2d 236 (Ch. 1941), and *Madden v. Madden*, 136 N. J. Eq. 132 (E. & A. 1945), are authority for the general principle that under our divorce statute past due instalments of alimony and support for children do not vest as they become in arrears but are subject to the control of the court."

In Welser v. Welser, 54 N. J. Super. 555, 149 A. 2d 814 (1959), the Appellate Division of the New Jersey Superior Court reaffirmed this principle, and upheld the decision of the lower court which retroactively cancelled arrearages of over $4,000, computed the remaining arrearages at $1,605, entered a judgment against defendant in the reduced amount and further provided that the judgment could be paid in install-

ments of $5 per week. The court pointed out that even after the entry of arrearages as a judgment at law, the chancery court retains control over the execution of such a judgment, and could properly limit the method of enforcement. The court quoted with approval the following statement from 10 N. J. Practice (Marriage, Divorce and Separation), Herr, §439, page 441:

"The arrearages of an award of alimony possess the force of a judgment at law only in those cases where the court has certified the amount thereof."

In Seltzer, Encyclopaedia of New Jersey Law, vol. 2, page 146, it is stated:

"Before such arrears are enforcible by an execution at law, the arrears must be fixed by an order of the Chancery Division (because the court has inherent power to modify alimony awards) and an abstract of such order must be filed and recorded in the Superior Court, Law Division N J S 2A: 16-19. The order fixing arrears of alimony then becomes a lien and has the force of a judgment in the Law Division, which can be enforced by execution, and is entitled to full faith and credit in a suit to enforce it in another jurisdiction."

The 1958 supplement to that work makes it clear that the same principle is applicable to decrees for the support of children, as in the case of alimony for a wife, citing Slep v. Slep, 43 N. J. Super. 538, 129 A. 2d 317 (1957).

Applying these authorities to the present case, it is abundantly clear that the New Jersey decree upon which plaintiff's claim is based does not have the status or force of a final judgment, and is not entitled to full faith and credit. Indeed, there is some indication that, even in the absence of any affirmative defense by defendant, the New Jersey courts would be reluctant to

enter judgment for any amount greater than one year's arrearages. Duffy v. Duffy, supra, Welser v. Welser, supra. In any event, it is clear that plaintiff's complaint does not set forth a cause of action, in the absence of an averment that the amount of the arrearages have been reduced to judgment.

One further matter should perhaps be mentioned. We are unable to agree with counsel for defendant that the questions raised by his preliminary objections are jurisdictional. Clearly, this court has personal jurisdiction over defendant, and this would seem to carry with it jurisdiction over the subject matter of any in personam claim against defendant. The test of jurisdiction is whether the court has power to enter upon the inquiry, not whether it is able to grant the relief sought in the particular case: Adler v. Philadelphia, 397 Pa. 660 (1959) ; Upholsterers' International Union of North America v. United Furniture Workers of America C. I. O., 356 Pa. 469 (1947). This court has jurisdiction to entertain suits on foreign judgments. The defect here is that the complaint does not aver the existence of an enforceable judgment.

We, therefore, feel that defendant's preliminary objections should have been styled a demurrer, based upon the failure of the complaint to set forth a cause of action upon which relief can be granted. However, since defendant's preliminary objections do set forth sufficient reasons, we regard the title given them as relatively unimportant, and have treated the preliminary objections as a demurrer, rather than a "petition raising a question of jurisdiction."

Leave will be given to plaintiff to amend her complaint, as she may be able to show that a judgment for arrearages has in fact been entered in New Jersey, or she may be able to show other facts, apart from the New Jersey decree, which give her a just claim against defendant.

*Order*

And now, November 6, 1961, for the reasons set forth in the foregoing opinion, defendant's preliminary objections, considered as a demurrer, are sustained, with leave to plaintiff to file an amended complaint within 20 days.